RAJ V. ABHYANKER, California SBN 233,284
Email: raj@legalforcelaw.com


**LEGALFORCE RAPC WORLDWIDE, P.C.**
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone: (650) 965-8731

Attorney for Movant

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| | MDL No. 3145 |
| IN RE: ANTITRUST LITIGATION INVOLVING AXON ENTERPRISE, INC. | **CORRECTED COMBINED REPLY TO OPPOSITIONS TO MOTION TO CONSOLIDATE AND TRANSFER CASES FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS TO THE DISTRICT OF NEW JERSEY PURSUANT TO 28 U.S.C. § 1407** |

1
Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on
Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. §
1407
MDL No. 3145

1

2  TO THE HONORABLE MEMBERS OF THE JUDICIAL PANEL ON

3  MULTIDISTRICT LITIGATION:

4      1. Movant GovernmentGPT, Inc. ("Movant" or "GovGPT") submits this

5  Corrected combined Reply to Defendant Axon Enterprise, Inc.'s ("Axon"),

6  Defendant Microsoft Corporation, Inc.'s ("Microsoft"), Defendant Safariland

7  LLC's ("Safariland"), and NJ Plaintiffs' ("NJ Plaintiffs'") Oppositions to

8  Movant's Motion to Transfer and Consolidate pursuant to 28 U.S.C. § 1407

9  (collectively, "Oppositions"). The Oppositions fail to rebut the clear efficiencies

10  and benefits of consolidating this case with *Township of Howell, Monmouth*

11  *County, New Jersey v. Axon Enterprise, Inc., et al.*, Case No.

12  3:23-cv-07182-RK-RLS (D.N.J.). Moreover, the Oppositions' arguments against

13  consolidation highlight the very inefficiencies and risks of inconsistent rulings

14  that Movant seeks to avoid through centralization. For the reasons stated below,

15  consolidation and transfer to the District of New Jersey remain appropriate.

16  **I.    INTRODUCTION**

17      2. Movant's motion seeks to consolidate two cases involving overlapping

18  factual and legal issues related to Axon's alleged monopolization and

19  anti-competitive practices in the markets for body-worn cameras ("BWC") and

20  digital evidence management systems ("DEMS"). Despite Axon's assertions, both

21  cases address core questions of Axon's market dominance, use of exclusivity

22  agreements, bundling practices, and partnerships with companies like Microsoft.

23  Consolidation would prevent duplicative discovery, inconsistent rulings, and

24  conflicting pretrial schedules while promoting judicial economy.

25      3. Axon's opposition mischaracterizes the scope of these cases and ignores

26  the significant efficiencies that would result from coordination. Moreover, Axon's

27  concerns about procedural complexity are speculative and do not outweigh the

28

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on
Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. §
1407
MDL No. 3145

clear benefits of consolidation.  Safariland's opposition also mischaracterizes the nature of these related cases and overlooks the significant factual and legal overlap between them. Both cases involve allegations of anti-competitive conduct by Axon and its affiliates, including Safariland, in the markets for BWCs and DEMS.  Safariland's opposition—focusing on procedural distinctions and attempts to minimize the shared issues—ignores the efficiencies that consolidation would bring.

4.   The motion to transfer and consolidate is not, as the Oppositions' allege, an attempt at forum shopping or a "fresh start" by GovGPT. Rather, it is a necessary step to streamline overlapping discovery, avoid conflicting rulings, and resolve common questions of fact and law in a coordinated manner.

## II.   **ARGUMENT**

### A. Axon's Opposition Reinforces the Need for Consolidation

5.   Axon's primary argument—that the cases are too distinct to justify consolidation—is unsupported and actually highlights the inefficiencies and risks of inconsistent rulings if the cases proceed independently.

6.    Axon's attempt to distinguish the cases by focusing on differences in plaintiffs (a competitor vs. purchasers) ignores the overlapping nature of the claims and evidence.  Both cases involve allegations of Axon's monopolization and anti-competitive conduct in the BWC and DEMS markets.    Common discovery topics include: **(1)** Axon's use of exclusivity agreements and bundling practices to foreclose competition; and **(2)** Axon's acquisition of competitors and efforts to consolidate market power.

7.   Axon's argument that consolidation would create inefficiencies is unpersuasive. In fact, allowing these cases to proceed separately would require duplicative discovery, including depositions of the same witnesses and production of overlapping documents.  Moreover, there would be risk of inconsistent rulings

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. § 1407
MDL No. 3145

on overlapping legal issues, such as the application of antitrust standards to Axon's conduct. This would, in turn, force courts to resolve redundant procedural and substantive motions, wasting judicial resources.

B. Axon's Opposition Mischaracterizes Procedural Complexities

8. Axon's contention that consolidation would introduce procedural complexities due to the inclusion of Microsoft in the Arizona case is misplaced. While Microsoft is not a defendant in the New Jersey case, its role in providing exclusive cloud services for Axon's DEMS platform is directly relevant to the monopolization claims central to both actions. Indeed, the New Jersey complaint repeatedly mentions DEMS and the cloud-based server system that hosts Axon data as a contributing factor in Axon's dominance. The NJ Plaintiffs describe that "[a]ll components of a BWC System must interoperate effectively and, in fact, Axon requires police departments to integrate their Axon BWCs with Axon's DEMS. As a result, police departments typically purchase the components of the BWC System together." CAC ¶¶ 39-40.

9. Safariland's alleged complicity in Axon's exclusionary practices further underscores the interconnectedness of the claims. In the NJ Plaintiffs' opposition to the motion to dismiss, they describe that "Axon has likewise raked in sky-high margins of over 70% on DEMS since the Acquisition." (ECF 80, in 3:23-cv-07182-RK-RLS, pg. 19 of 57). Consolidation would streamline discovery and pretrial proceedings related to these parties' roles without introducing undue complexity.

C. Common Questions of Fact Exist that Warrant Consolidation

10. Microsoft asserts that the actions lack common factual issues, primarily because the cases involve different parties and claims. The New Jersey Plaintiffs also argue that consolidation would create inefficiencies due to differences in parties and claims. These arguments fail to recognize the practical benefits of

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. § 1407
MDL No. 3145

1   coordination because depositions of Axon personnel, document production on

2   exclusivity agreements, and analysis of market foreclosure will overlap

3   substantially in both cases. Consolidation streamlines these efforts, reducing the

4   burden on parties and witnesses.

5       11. Centralized pretrial proceedings prevent conflicting rulings on key issues,

6   such as market definition, exclusivity agreements, and tolling. These rulings are

7   foundational to both cases and benefit from a coordinated approach.  While

8   Microsoft is not a party to the New Jersey action, its partnership with Axon is

9   integral to understanding Axon's closed ecosystem in the DEMS market.

10   Consolidating the cases ensures that Microsoft's role is fully examined without

11   duplicative or inconsistent discovery efforts.

12       12. However, this mischaracterizes the substantial overlap in allegations

13   regarding monopolization in the markets for body-worn cameras and digital

14   evidence management systems. Moreover, courts have consistently held that

15   differences in parties or specific claims do not preclude consolidation where

16   shared factual issues predominate. See *In re Bank of N.Y. Mellon Sec. Lending

17   Litig.*, 716 F. Supp. 2d 1361, 1362 (J.P.M.L. 2010).  Both actions challenge

18   Axon's anticompetitive practices, including exclusivity agreements and bundling

19   strategies that suppress competition.   For example, the NJ Plaintiffs describe in

20   their operative complaint that "Axon requires police departments to integrate

21   Axon BWCs with Evidence.com, Axon's DEMS, because Axon body cameras

22   only work with Evidence.com." CAC at ¶40.  Since Evidence.com and the Axon

23   DEMS dominance is made possible only because of Microsoft's Azure

24   framework, there are common factual issues.

25       13. Safariland asserts that the cases share only "superficial similarities."

26   However, this assertion ignores the significant factual and legal overlap between

27   the cases: since both cases allege that Axon used its acquisition of Safariland's

28

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on
Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. §
1407
MDL No. 3145

1  former subsidiary, VieVu, to cement a monopoly in the BWC and DEMS markets.

2  Moreover, both cases involve Axon's alleged use of exclusivity agreements,

3  bundling practices, and market foreclosure to eliminate competition.

4  14. Consolidation would allow for coordinated discovery on overlapping

5  issues, including Axon's acquisition of VieVu and its impact on competition and

6  Safariland's role in facilitating the transaction and its knowledge of market

7  conditions. Consolidation would also allow coordinated discovery over the

8  competitive dynamics of the BWC and DEMS markets, including the effects of

9  Axon's business practices.

10 15. The core antitrust allegations—Axon's foreclosure of competition and

11 abuse of market power—are also fundamentally similar.   The NJ Plaintiffs'

12 describe that "[s]witching costs pose another barrier to entry" and that "[i]f a

13 police department does switch BWC Systems, it must incur significant IT and

14 training costs in switching its body camera videos away from the DEMS." CAC

15 ¶¶ 69 The NJ Plaintiffs described that Axon and VieVu also competed vigorously

16 on non-price aspects of BWC Systems including the development of various

17 innovative features such as auto-activation of BWCs in the event of an officer

18 unholstering a gun or Taser, and computer-assisted facial redaction tools for

19 DEMS videos. Consumers benefited from this competition in innovation.  *Id.* at

20 ¶¶ 86.   The renewed 2022 agreement with Microsoft to host all DEMS content

21 on Azure has made switching extremely difficult in the age of artificial

22 intelligence, especially in view of the anti-competitive nature of Microsoft's role

23 with OpenAI.

24 D. Significant Overlapping Issues Support Consolidation

25 16. The opposition downplays the substantial overlap in claims and discovery

26 topics between the New Jersey and Arizona cases.  Specifically, both cases

27 address Axon's monopolistic practices, including the foreclosure of competition

28

6

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. § 1407
MDL No. 3145

through its acquisitions (e.g., of VieVu as alleged in both cases, and Fusus in the Arizona case), as well as its exclusive agreements (e.g., such as the non-compete clauses with Safariland as alleged in both cases, and integration of Axon's DEMS with Microsoft Azure as alleged in the Arizona case). These issues form the backbone of GovGPT's claims and are integral to the New Jersey Plaintiffs' allegations regarding Axon's market dominance.

17. The FTC's amicus brief supports the anti-competitive effects of exclusivity agreements in the BWC and DEMS markets. Consolidation allows for unified discovery into these agreements, their competitive impact, and the proper definition of relevant markets.  Moreover, both cases seek injunctive relief and damages to address Axon's monopolistic conduct. Resolving these remedies in a coordinated proceeding avoids piecemeal rulings that could undermine consistent enforcement of antitrust laws.

E.   The District of New Jersey Is the Logical Forum for Consolidation

18. The District of New Jersey is the logical forum for consolidated proceedings because centrality to the Township of Howell case is that the New Jersey action involves claims brought by government purchasers, which complement Movant's claims as a competitor. Consolidating these cases in New Jersey would allow for a comprehensive examination of Axon's alleged monopolistic practices.

19. Judge Kirsch has already overseen substantial pretrial proceedings in the New Jersey case already, including a motion to consolidate cases filed by the NJ Plaintiffs themselves (ECF 24 in 3:23-cv-07182-RK-RLS).    Thus New Jersey court is well-situated to coordinate overlapping discovery and adjudicate shared claims efficiently.

F. New Jersey Plaintiffs' earlier Motion for Consolidation Supports Broader Coordination Across Jurisdictions

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. § 1407
MDL No. 3145

20. An earlier motion to consolidate was filed on October 25, 2023, in the District of New Jersey by the NJ Plaintiffs which supports the need to consolidate here. *Id.* It successfully sought to consolidate related cases within the district that involve overlapping claims against Axon Enterprise, Inc., focusing on alleged anti-competitive practices in the BWC and DEMS markets, involving different parties. In that motion itself, the NJ Plaintiffs admit the existence of multiple cases with overlapping factual and legal questions surrounding Axon's monopolistic practices in the BWC and DEMS markets. This supports Movant's position that these issues are not confined to a single jurisdiction but instead represent a systemic issue requiring coordinated pretrial proceedings.

21. The New Jersey plaintiffs had then argued that consolidating their cases will streamline discovery, avoid duplicative efforts, and ensure consistent rulings. These same principles apply to the broader consolidation of related cases, including the Arizona case, where overlapping issues such as Axon's exclusivity agreements, acquisitions, and Microsoft Azure integration are central to the claims.

G. Axon and Safariland's earlier Consent to Consolidation Underscores the Need for Broader Coordination

22. Axon and Safariland consented to consolidation within the New Jersey district, implicitly acknowledging the efficiencies gained from centralizing pretrial proceedings, and to the New Jersey district. *Id.* That motion describes that "Defendants have informed Plaintiffs that they take no position on Plaintiffs' motion for appointment of Interim Co-Lead Counsel and consent to consolidation for all purposes." *Id.*

23. This lends credibility to Movant's argument for cross-jurisdictional consolidation to further prevent duplicative litigation and inconsistent outcomes.

H. Consolidation Promotes Judicial Economy and Efficiency

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. § 1407
MDL No. 3145

24. Microsoft's claim that consolidation will not promote efficiency is unsupported. The potential for duplicative discovery and conflicting rulings on overlapping legal issues far outweighs any logistical challenges.  Specifically, both cases will require substantial discovery regarding Axon's contractual practices, partnerships, and market strategies, including its use of Microsoft's Azure services to support its Evidence.com platform. Consolidation allows for coordinated discovery, reducing costs and burdens on all parties.

25. Consolidation ensures uniform pretrial rulings on critical issues such as market definition, monopolization standards, and admissibility of evidence, minimizing the risk of conflicting outcomes.  Moreover, Microsoft's reliance on the limited number of actions to argue against consolidation is also misplaced. Even when only two cases are involved, consolidation is appropriate if it serves judicial efficiency.

I.  Procedural Differences Do Not Outweigh the Benefits of Consolidation

26. Safariland emphasizes procedural differences, such as the class action status of the Township of Howell case and GovGPT's status as a competitor, to argue against consolidation. These distinctions are overstated because while the *Township of Howell* case involves claims by purchasers and GovGPT's case involves claims by a competitor, the core allegations of market foreclosure and monopolization are the same.

27. Courts routinely consolidate cases with different procedural postures when they involve overlapping factual issues.  While, Safariland argues that Microsoft's involvement in the Arizona case complicates consolidation, this is not the case. Microsoft's role is directly tied to Axon's alleged monopolistic practices, making it relevant to the broader antitrust issues. Consolidation allows for coordinated resolution of these intertwined claims.

28. Safariland's assertion that Microsoft's involvement complicates

9

consolidation overlooks the fact that the Township of Howell litigation touches directly on evidence management systems—a central component of Axon's alleged anti-competitive conduct. Evidence management is inextricably linked to Microsoft's role as the exclusive cloud provider for Axon's digital evidence systems, hosted on Azure. This relationship not only reinforces the interconnectedness of the claims across the cases but also underscores the need for a coordinated examination of Axon's practices and Microsoft's contributions to market foreclosure. Consolidating these cases will allow for a comprehensive and efficient resolution of these shared issues.

J. Judicial Economy Strongly Favors Consolidation

29. Safariland's argument that informal coordination is sufficient ignores the inefficiencies and risks of proceeding in separate courts.    However, without consolidation, parties would face duplicative depositions, overlapping document requests, and redundant motion practice, significantly increasing costs and delays. The risk of conflicting rulings on key issues, such as market definition and the anti-competitive effects of Axon's conduct, underscores the need for centralized pretrial proceedings.

30. The motion to stay filed in the Arizona case directly negates Safariland's argument that consolidation would create inefficiencies or delays. By seeking to pause proceedings pending the JPML's decision, Movant demonstrates a proactive approach to avoiding duplicative litigation and ensuring judicial economy. The Arizona motion to stay ensures that resources are not wasted on parallel discovery or pretrial rulings that could conflict with those in the New Jersey case if the JPML grants consolidation. This filing highlights the practicality and efficiency of centralizing pretrial proceedings, countering Safariland's claim that informal coordination would suffice.

K. The Oppositions Rely on Misleading Characterizations

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. § 1407
MDL No. 3145

31. The Oppositions allege that GovGPT delayed filing its motion until after the Arizona motions to dismiss were briefed. This overlooks the procedural history of the case, including the recent amendments to GovGPT's complaint and the evolving factual record. The timing of the motion does not negate the need for consolidation.  While only two cases are currently at issue, the significant factual overlap and complexity of the claims justify consolidation.  Moreover, Oppositions' claim that consolidation would burden parties and witnesses is unsubstantiated.  Coordinated proceedings reduce the overall burden by streamlining discovery and pretrial litigation.

L. Axon's Mirrored Arguments Across Cases Highlight the Need for Consolidation to Address Tolling and Market Definition

32. Axon's mirrored arguments across cases further demonstrate the need for consolidation. In both the Arizona and New Jersey actions, Axon asserts that Plaintiffs are not entitled to tolling due to allegedly distinct market definitions. The FTC's emphasis on tolling underscores the importance of consolidating cases to address shared questions regarding the duration and impact of Axon's anti-competitive conduct.  Indeed, Axon mirrors their arguments across both cases.  For example, Axon argues in its motion to dismiss on October 28, 2024 in the Arizona case in a manner that connects their arguments with the New Jersey case with respect to tolling, writing that "GovGPT is not entitled to tolling because its market is defined distinctly from, and more broadly than, the FTC's market"  ECF 106, pg. 16 of 33, in Case 2:24-cv-01869-SMB.  Notably, this is the same argument made earlier by Axon in the New Jersey case on May 18, 2024, where it makes the exact same argument, saying that "Plaintiffs are not entitled to tolling here because their purported BWC System Market is defined distinctly from, and more broadly than, the FTC's market."  ECF 71, pg. 33 of 48,

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. § 1407
MDL No. 3145

in Case 3:23-cv-07182-RK-RLS.

33. Thus the tolling and market definition issues cannot be adequately resolved in isolation. By consolidating these cases, the JPML can ensure that the FTC's concerns are addressed comprehensively and consistently, without risking fragmented litigation.

M. FTC Statements Highlight the Anti-Competitive Effects

34. The FTC's amicus brief (Dkt. 86) in the New Jersey case highlights its interest in key common factual and legal issues between the cases involving Axon. Specifically, the FTC emphasizes that Plaintiffs are not bound by the narrower market definition proposed in the FTC's administrative complaint. The broader market definitions used in the civil litigation—including the inclusion of potential competition in the Conducted Energy Weapons (CEW) and Body-Worn Camera (BWC) markets—are valid and relevant to assess the anti-competitive effects of Axon's conduct. The brief underscores the harm from eliminating perceived potential competition, a central issue in both cases. The FTC discusses how Safariland's perceived potential to enter the CEW market restrained Axon's pricing and behavior. Axon's acquisition of VieVu and the accompanying non-compete agreements eliminated this dynamic, increasing market foreclosure. This doctrine is equally applicable to Sherman Act and Clayton Act claims, forming a critical overlap between the cases. Moreover. the FTC discusses the long-term implications of Axon's anti-competitive practices, particularly the role of non-compete agreements and exclusivity arrangements. These practices align with the claims in both jurisdictions and the FTC's overarching policy goals.

35. The FTC's active participation in the New Jersey case through its amicus filing highlights its investment in ensuring consistent application of antitrust laws and market analysis. This interest supports the consolidation of these cases for pretrial proceedings to address overlapping questions like market definition,

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. § 1407
MDL No. 3145

perceived competition, and the competitive effects of Axon's acquisitions and agreements. Consolidation will streamline discovery and legal determinations while avoiding conflicting outcomes.

36. The FTC's amicus brief in the New Jersey case highlights its interest in ensuring the proper legal framework is applied to Axon's anti-competitive conduct. Although Microsoft is not a named defendant in the New Jersey action, the FTC's focus on exclusivity and market foreclosure directly implicates Microsoft's partnership with Axon in the Arizona case. Specifically, the FTC's analysis of how Axon uses exclusive arrangements and ecosystem integration to foreclose competition aligns with the allegations in the Arizona case regarding Microsoft Azure's role as the exclusive host for Axon's digital evidence management systems.

37. The FTC's emphasis on market definition and the elimination of perceived potential competition applies equally to the Arizona and New Jersey actions. In the Arizona case, Microsoft's exclusivity agreements with Axon are central to understanding how Axon entrenches its monopoly by leveraging digital evidence systems hosted on Azure. These issues are interwoven with the broader anti-competitive practices being litigated in New Jersey. Consolidation would allow for a unified approach to discovery and legal analysis of these overlapping claims, ensuring consistent rulings on the interplay between Axon's partnerships, Microsoft's role, and market foreclosure.

38. The FTC's amicus brief in the New Jersey case, underscores the agency's focus on Axon's use of exclusivity agreements to foreclose competition. In the Arizona case, Microsoft Azure's role as the exclusive cloud hosting provider for Axon's digital evidence management systems is central to Axon's ability to lock law enforcement agencies into its ecosystem, preventing them from adopting competing products.

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on
Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. §
1407
MDL No. 3145

39. The FTC's broader focus on exclusivity and the elimination of perceived competition highlights the need for consolidated pretrial proceedings to examine Axon's anti-competitive practices comprehensively. Axon's integration with Microsoft Azure and its restrictive agreements harm not only competitors but also law enforcement agencies as purchasers, creating a closed ecosystem that forecloses alternative providers.

40. By consolidating these cases, the JPML can ensure consistent rulings and coordinated discovery into the intertwined roles of Axon and Microsoft in foreclosing competition. Without consolidation, there is a significant risk of conflicting interpretations of antitrust issues, including market definition and the impact of exclusivity agreements, undermining the efficient resolution of these claims.

O. Microsoft will not suffer Undue Prejudice

41. Microsoft's reliance on the limited number of actions to argue against consolidation is also misplaced. Even when only two cases are involved, consolidation is appropriate if it serves judicial efficiency. Microsoft's argument regarding the pendency of its motion to dismiss is equally unpersuasive. Resolution of its motion would not eliminate the need for coordinated discovery or consistent rulings across these related cases.

P. GovernmentGPT's Motion is not Gamesmanship

42. The Oppositions' accusation of forum shopping is baseless. GovGPT seeks consolidation not to secure a favorable forum, but to ensure efficient and consistent adjudication of overlapping claims. The timing of GovGPT's motion reflects the progression of the cases and the need to address shared issues before duplicative proceedings escalate.

Q. Movant's Motion to Stay in the Arizona Case Supports the Need for Consolidation

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. § 1407
MDL No. 3145

43. In the District of Arizona, Movant has filed a motion to stay all proceedings pending the JPML's decision on consolidation and transfer. Proceeding in Arizona while the JPML evaluates consolidation would result in duplicative discovery efforts and create the risk of inconsistent rulings on overlapping issues, such as Axon's use of exclusivity agreements and bundling practices. Movant has also requested that, should the JPML transfer the case, the Arizona court stay adjudication of any claims not transferred, including the Lanham Act and unfair competition claims to further promote judicial efficiency. This demonstrates Movant's commitment to resolving all related claims in a coordinated manner.

## III. <u>CONCLUSION</u>

44. For the foregoing reasons, Movant respectfully requests that the JPML grant Movant's motion to transfer and consolidate this case with Township of Howell in the District of New Jersey for coordinated pretrial proceedings.

Respectfully submitted this Tuesday January 28, 2025.

LEGALFORCE RAPC WORLDWIDE P.C.

<u>/s/ Raj Abhyanker</u>
Raj Abhyanker
Attorney for Movant GovernmentGPT, Inc.

RAJ V. ABHYANKER, California SBN 233,284
Email: raj@legalforcelaw.com

**LEGALFORCE RAPC WORLDWIDE, P.C.**
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone: (650) 965-8731

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. § 1407
MDL No. 3145

# CERTIFICATE OF SERVICE

I hereby certify that this notice is being served via emailed today and filed via ECF today, January 28, 2025 to each of the following:

Counsel for Parties in : *Township of Howell, Monmouth County, New Jersey v. Axon Enterprise, Inc., et al.*

      a. **District:** United States District Court for the District of New Jersey
      b. **Case No.:** 3:23-cv-07182-RK-RLS

As summarized below :

| | |
|---|---|
| **Plaintiff** | Michael D Fitzgerald |
| | 1 Industrial Way West |
| **Township Of Howell,** | Suite Unit B |
| **Monmouth County, New** | Eatontown, NJ07724 |
| **Jersey** | 732-223-2200 |
| **Individually And On Behalf** | Email: Mdfitz@briellelaw.com |
| **Of All Others Similarly** | Lead Attorney |
| **Situated** | Attorney To Be Noticed |
| | |
| | Kellie Lerner |
| | Shinder Cantor Lerner LLP |
| | 14 Penn Plaza |
| | 19th Floor |
| | New York, NY10122 |
| | 646-960-8601 |
| | Fax: 646-960-8625 |
| | Email: Kellie@scl-llp.com |
| | Attorney To Be Noticed |
| | |
| **Plaintiff Consolidated** | William Gerald Caldes |
| **City Of Augusta, Kennebec** | Spector Roseman & Kodroff, P.C. |
| **County, Maine** | 2001 Market Street |
| **23-20897** | Suite 3420 |
| | Philadelphia, PA19103 |
| | 215-496-0300 |
| | Fax: 215-496-6611 |
| | Email: Bcaldes@srkattorneys.com |
| | Lead Attorney |
| | Attorney To Be Noticed |

16
Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on
Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. §
1407
MDL No. 3145

| | |
|---|---|
| **Plaintiff Consolidated**<br>**Mayor And City Council Of**<br>**Baltimore**<br>**23-21156** | Eric Todd Kanefsky<br>Calcagni & Kanefsky LLP<br>One Newark Center<br>1085 Raymond Blvd., 14th Floor<br>Newark, NJ 07102<br>(862) 397-1796<br>Email: Eric@ck-litigation.com<br>Lead Attorney<br>Attorney To Be Noticed |
| | Sharon K. Robertson<br>Cohen Milstein Sellers & Toll Pllc<br>88 Pine Street<br>14th Floor<br>New York, NY10005<br>212-838-7797<br>Email: Srobertson@cohenmilstein.com<br>Lead Attorney<br>Attorney To Be Noticed |
| **Defendant**<br>**Axon Enterprise, Inc.** | Liza M. Walsh<br>Walsh Pizzi O'Reilly Falanga LLP<br>Three Gateway Center<br>100 Mulberry Street<br>15th Floor<br>Newark, NJNj 07102<br>973.757.1100<br>Email: Lwalsh@walsh.law<br>Lead Attorney<br>Attorney To Be Noticed |
| | Eric S. Padilla<br>Walsh Pizzi O'reilly Falanga LLP<br>Three Gateway Center<br>100 Mulberry Street<br>15th Floor<br>Newark, NJ07102<br>(973) 757-1012<br>Email: Epadilla@walsh.law<br>Attorney To Be Noticed |

17
Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on
Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. §
1407
MDL No. 3145

| | | |
|---|---|---|
| 1 | | |
| 2 | | Katelyn O'reilly |
| 3 | | Walsh Pizzi O'reilly Falanga LLP |
| | | Three Gateway Center |
| 4 | | 100 Mulberry Street |
| 5 | | 15th Floor |
| | | Newark, NJ07102 |
| 6 | | 973-757-1100 |
| 7 | | Email: Koreilly@thewalshfirm.com |
| | | Attorney To Be Noticed |
| 8 | | |

**Defendant**
**Safariland, LLC**

Richard B. Harper
Baker Botts, LLP
30 Rockerfeller Plaza
New York, NY 10112
(212) 408-2675
Fax: (212) 259-2475
Email:
Richard.Harper@bakerbotts.com
Lead Attorney
Attorney To Be Noticed

Steven A. Haber
Obermayer, Rebmann, Maxwell &
Hippel, LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA19103-1895
(215) 665-3000
Email: Steven.Haber@obermayer.com
Lead Attorney
Attorney To Be Noticed

**Amicus**
**Federal Trade Commission**

Katherine Van Dyck
Federal Trade Commission
600 Pennsylvania Ave NW
Washington, DC20580
202-386-2652
Email: kvandyck@ftc.gov
Lead Attorney
Attorney To Be Noticed

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on
Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. §
1407
MDL No. 3145

Counsel for Parties in : *GovernmentGPT Incorporated v. Axon Enterprise, Inc., et al.*

    a. **District:** United States District Court for the District of Arizona
    b. **Case No.:** 2:24-cv-01869-SMBas summarized below :

As summarized below :

| | |
|---|---|
| **Plaintiff**<br>**GovernmentGPT**<br>**Incorporated** | Raj Abhyanker<br>Raj Abhyanker PC<br>1580 W El Camino Real, Ste. 10<br>Mountain View, CA 94040<br>650-390-6461<br>Fax: 650-989-2131<br>Email: raj@legalforcelaw.com<br>LEAD ATTORNEY<br>PRO HAC VICE<br>ATTORNEY TO BE NOTICED |
| **Defendant**<br>**Axon Enterprise**<br>**Incorporated**<br>**formerly doing business as**<br>**Taser International**<br>**Incorporated** | Charles W Steese<br>Papetti Samuels Weiss McKirgan LLP<br>16430 N Scottsdale Rd., Ste. 290<br>Scottsdale, AZ 85254<br>480-800-3537<br>Email: csteese@pswmlaw.com<br>LEAD ATTORNEY<br>ATTORNEY TO BE NOTICED |
| | Gayathiri Shanmuganatha<br>Axon Enterprise Incorporated<br>17800 N 85th St.<br>Scottsdale, AZ 85255-9603<br>602-830-0390<br>Email: gshanmuganatha@axon.com<br>LEAD ATTORNEY<br>ATTORNEY TO BE NOTICED |
| | Pamela Beth Petersen<br>Axon Enterprise Incorporated<br>17800 N 85th St.<br>Scottsdale, AZ 85255-9603<br>623-326-6016<br>Fax: 480-905-2027 |

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on
Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. §
1407
MDL No. 3145

Email: ppetersen@axon.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Randall Papetti
Papetti Samuels Weiss McKirgan LLP
16430 N Scottsdale Rd., Ste. 290
Scottsdale, AZ 85254
480-800-3535
Email: rpapetti@pswmlaw.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Defendant**
**Microsoft Corporation**

Jessica Lee Everett-Garcia
Perkins Coie LLP - Phoenix, AZ
2525 E Camelback Rd., Ste. 500
Phoenix, AZ 85016
602-351-8000
Fax: 602-648-7027
Email:
JEverettGarcia@perkinscoie.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Julia Chapman
Dechert LLP - Philadelphia, PA
2929 Arch St, 26th Fl.
Philadelphia, PA 19104
215-994-2060
Email: julia.chapman@dechert.com
LEAD ATTORNEY
PRO HAC VICE
ATTORNEY TO BE NOTICED

Russell Cohen
Dechert LLP - San Francisco, CA
45 Fremont St., 26th Fl.
San Francisco, CA 94105
415-262-4500
Email: russ.cohen@dechert.com
LEAD ATTORNEY
PRO HAC VICE

20

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on
Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. §
1407
MDL No. 3145

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTORNEY TO BE NOTICED

Victoria Romine
Perkins Coie LLP - Phoenix, AZ
2525 E Camelback Rd., Ste. 500
Phoenix, AZ 85016
602-351-8071
Email: vromine@perkinscoie.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Defendant**
**Safariland LLC**

Ian Matthew Fischer
Jaburg Wilk - Phoenix, AZ
1850 N Central Ave., Ste. 1200
Phoenix, AZ 85004
602-248-1065
Email: imf@jaburgwilk.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

James Granger Kress
Baker & Botts LLP - Washington DC
700 K St. NW
Washington, DC 20001
202-639-7884
Fax: 202-639-1159
Email: james.kress@bakerbotts.com
LEAD ATTORNEY
PRO HAC VICE
ATTORNEY TO BE NOTICED

Corrected Combined Reply to Oppositions to Motion before the Judicial Panel on
Multidistrict Litigation to Consolidate and Transfer the Cases under 28 U.S.C. §
1407
MDL No. 3145